Next   Previous   Contents   Sections   Search   Help

# Sec. 2010. Unified credit against estate tax

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
1/5/2015 3:35:28 PM
DEBBIE AUTREY
Clerk

*TITLE 26, Subtitle B, CHAPTER 11, Subchapter A, PART II, Sec. 2010.*

## STATUTE

**(a)** General rule
A credit of the applicable credit amount shall be allowed to the estate of every decedent against the tax imposed by section 2001.

**(b)** Adjustment to credit for certain gifts made before 1977
The amount of the credit allowable under subsection (a) shall be reduced by an amount equal to 20 percent of the aggregate amount allowed as a specific exemption under section 2521 (as in effect before its repeal by the Tax Reform Act of 1976) with respect to gifts made by the decedent after September 8, 1976.

**(c)** Applicable credit amount
For purposes of this section, the applicable credit amount is the amount of the tentative tax which would be determined under the rate schedule set forth in section 2001(c) if the amount with respect to which such tentative tax is to be computed were the applicable exclusion amount determined in accordance with the following table: In the case of estates of decedents The applicable dying during: exclusion amount
is:
2002 and 2003 $1,000,000
2004 and 2005 $1,500,000
2006, 2007, and 2008 $2,000,000
2009 $3,500,000.

**(d)** Limitation based on amount of tax
The amount of the credit allowed by subsection (a) shall not exceed the amount of the tax imposed by section 2001.

## SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 2011, 2012, 2013, 2014, 2056A, 2057, 2102, 2107, 2201, 2505, 2631, 6018, 6601 of this title.

**APPENDIX PAGE 1**



# Sec. 2056. Bequests, etc., to surviving spouse

*TITLE 26, Subtitle B, CHAPTER 11, Subchapter A, PART IV, Sec. 2056.*

## STATUTE

**(a)** Allowance of marital deduction

For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsection (b), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

**(b)** Limitation in the case of life estate or other terminable interest

**(1)** General rule

Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest -

**(A)** if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

**(B)** if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse; and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under subparagraphs (A) and (B)) -

**(C)** if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust. For purposes of this paragraph, an interest shall not be considered as an interest which will terminate or fail merely because it is the ownership of a bond, note, or similar contractual obligation, the discharge of which would not have the effect of an annuity for life or for a term.                   **APPENDIX PAGE 2**

**(2)** Interest in unidentified assets
Where the assets (included in the decedent's gross estate) out of which, or the proceeds of which, an interest passing to the surviving spouse may be satisfied include a particular asset or assets with respect to which no deduction would be allowed if such asset or assets passed from the decedent to such spouse, then the value of such interest passing to such spouse shall, for purposes of subsection (a), be reduced by the aggregate value of such particular assets.

**(3)** Interest of spouse conditional on survival for limited period
For purposes of this subsection, an interest passing to the surviving spouse shall not be considered as an interest which will terminate or fail on the death of such spouse if -

**(A)** such death will cause a termination or failure of such interest only if it occurs within a period not exceeding 6 months after the decedent's death, or only if it occurs as a result of a common disaster resulting in the death of the decedent and the surviving spouse, or only if it occurs in the case of either such event; and

**(B)** such termination or failure does not in fact occur.

**(4)** Valuation of interest passing to surviving spouse
In determining for purposes of subsection (a) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this section -

**(A)** there shall be taken into account the effect which the tax imposed by section 2001, or any estate, succession, legacy, or inheritance tax, has on the net value to the surviving spouse of such interest; and

**(B)** where such interest or property is encumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such encumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined.

**(5)** Life estate with power of appointment in surviving spouse
In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving

**APPENDIX PAGE 3**

spouse -

    **(A)** the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and

    **(B)** no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse. This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

**(6)** Life insurance or annuity payments with power of appointment in surviving spouse

In the case of an interest in property passing from the decedent consisting of proceeds under a life insurance, endowment, or annuity contract, if under the terms of the contract such proceeds are payable in installments or are held by the insurer subject to an agreement to pay interest thereon (whether the proceeds, on the termination of any interest payments, are payable in a lump sum or in annual or more frequent installments), and such installment or interest payments are payable annually or at more frequent intervals, commencing not later than 13 months after the decedent's death, and all amounts, or a specific portion of all such amounts, payable during the life of the surviving spouse are payable only to such spouse, and such spouse has the power to appoint all amounts, or such specific portion, payable under such contract (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), with no power in any other person to appoint such amounts to any person other than the surviving spouse -

    **(A)** such amounts shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and

    **(B)** no part of such amounts shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse. This paragraph shall apply only if, under the terms of the contract, such power in the surviving spouse to appoint such amounts, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

**(7)** Election with respect to life estate for surviving spouse

    **(A)** In general

    In the case of qualified terminable interest property -

        **(i)** for purposes of subsection (a), such property shall be treated as passing to the surviving spouse, and     **APPENDIX PAGE 4**

     **(ii)**  for purposes of paragraph (1)(A), no part of such property shall be treated as passing to any person other than the surviving spouse.

  **(B)**  Qualified terminable interest property defined
For purposes of this paragraph –

    **(i)**  In general
The term "qualified terminable interest property" means property
–

       **(I)**  which passes from the decedent,

       **(II)**  in which the surviving spouse has a qualifying income interest for life, and

       **(III)**  to which an election under this paragraph applies.

    **(ii)**  Qualifying income interest for life
The surviving spouse has a qualifying income interest for life if –

       **(I)**  the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct interest for life in the property, and

       **(II)**  no person has a power to appoint any part of the property to any person other than the surviving spouse. Subclause (II) shall not apply to a power exercisable only at or after the death of the surviving spouse. To the extent provided in regulations, an annuity shall be treated in a manner similar to an income interest in property (regardless of whether the property from which the annuity is payable can be separately identified).

    **(iii)**  Property includes interest therein
The term "property" includes an interest in property.

    **(iv)**  Specific portion treated as separate property
A specific portion of property shall be treated as separate property.

    **(v)**  Election
An election under this paragraph with respect to any property shall be made by the executor on the return of tax imposed by section 2001. Such an election, once made, shall be irrevocable.

  **(C)**  Treatment of survivor annuities
In the case of an annuity included in the gross estate of the decedent under section 2039 (or, in the case of an interest in an annuity arising under the community property laws of a State, included in the gross

**APPENDIX PAGE 5**

estate of the decedent under section 2033) where only the surviving spouse has the right to receive payments before the death of such surviving spouse -

(i)  the interest of such surviving spouse shall be treated as a qualifying income interest for life, and

(ii)  the executor shall be treated as having made an election under this subsection with respect to such annuity unless the executor otherwise elects on the return of tax imposed by section 2001. An election under clause (ii), once made, shall be irrevocable.

(8)  Special rule for charitable remainder trusts

(A)  In general
If the surviving spouse of the decedent is the only beneficiary of a qualified charitable remainder trust who is not a charitable beneficiary nor an ESOP beneficiary, paragraph (1) shall not apply to any interest in such trust which passes or has passed from the decedent to such surviving spouse.

(B)  Definitions
For purposes of subparagraph (A) -

(i)  Charitable beneficiary
The term "charitable beneficiary" means any beneficiary which is an organization described in section 170(c).

(ii)  ESOP beneficiary
The term "ESOP beneficiary" means any beneficiary which is an employee stock ownership plan (as defined in section 4975(e)(7)) that holds a remainder interest in qualified employer securities (as defined in section 664(g)(4)) to be transferred to such plan in a qualified gratuitous transfer (as defined in section 664(g)(1)).

(iii)  Qualified charitable remainder trust
The term "qualified charitable remainder trust" means a charitable remainder annuity trust or a charitable remainder unitrust (described in section 664).

(9)  Denial of double deduction
Nothing in this section or any other provision of this chapter shall allow the value of any interest in property to be deducted under this chapter more than once with respect to the same decedent.

(10)  Specific portion
For purposes of paragraphs (5), (6), and (7)(B)(iv), the term "specific portion" only includes a portion determined on a fractional or percentage

APPENDIX PAGE 6

basis.

**(c)** Definition

For purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if –

**(1)** such interest is bequeathed or devised to such person by the decedent;

**(2)** such interest is inherited by such person from the decedent;

**(3)** such interest is the dower or curtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent;

**(4)** such interest has been transferred to such person by the decedent at any time;

**(5)** such interest was, at the time of the decedent's death, held by such person and the decedent (or by them and any other person) in joint ownership with right of survivorship;

**(6)** the decedent had a power (either alone or in conjunction with any person) to appoint such interest and if he appoints or has appointed such interest to such person, or if such person takes such interest in default on the release or nonexercise of such power; or

**(7)** such interest consists of proceeds of insurance on the life of the decedent receivable by such person. Except as provided in paragraph (5) or (6) of subsection (b), where at the time of the decedent's death it is not possible to ascertain the particular person or persons to whom an interest in property may pass from the decedent, such interest shall, for purposes of subparagraphs (A) and (B) of subsection (b)(1), be considered as passing from the decedent to a person other than the surviving spouse.

**(d)** Disallowance of marital deduction where surviving spouse not United States citizen

**(1)** In general

Except as provided in paragraph (2), if the surviving spouse of the decedent is not a citizen of the United States –

**(A)** no deduction shall be allowed under subsection (a), and

**(B)** section 2040(b) shall not apply.

**(2)** Marital deduction allowed for certain transfers in trust

**(A)** In general
Paragraph (1) shall not apply to any property passing to the surviving spouse in a qualified domestic trust.

**(B)** Special rule
If any property passes from the decedent to the surviving spouse of

**APPENDIX PAGE 7**

the decedent, for purposes of subparagraph (A), such property shall be treated as passing to such spouse in a qualified domestic trust if -

    **(i)** such property is transferred to such a trust before the date on which the return of the tax imposed by this chapter is made, or

    **(ii)** such property is irrevocably assigned to such a trust under an irrevocable assignment made on or before such date which is enforceable under local law.

**(3)** Allowance of credit to certain spouses
If -

    **(A)** property passes to the surviving spouse of the decedent (hereinafter in this paragraph referred to as the "first decedent"),

    **(B)** without regard to this subsection, a deduction would be allowable under subsection (a) with respect to such property, and

    **(C)** such surviving spouse dies and the estate of such surviving spouse is subject to the tax imposed by this chapter, the Federal estate tax paid (or treated as paid under section 2056A(b)(7)) by the first decedent with respect to such property shall be allowed as a credit under section 2013 to the estate of such surviving spouse and the amount of such credit shall be determined under such section without regard to when the first decedent died and without regard to subsection (d)(3) of such section.

**(4)** Special rule where resident spouse becomes citizen
Paragraph (1) shall not apply if -

    **(A)** the surviving spouse of the decedent becomes a citizen of the United States before the day on which the return of the tax imposed by this chapter is made, and

    **(B)** such spouse was a resident of the United States at all times after the date of the death of the decedent and before becoming a citizen of the United States.

**(5)** Reformations permitted

    **(A)** In general
In the case of any property with respect to which a deduction would be allowable under subsection (a) but for this subsection, the determination of whether a trust is a qualified domestic trust shall be made -

        **(i)** as of the date on which the return of the tax imposed by this chapter is made, or

APPENDIX PAGE 8

    **(ii)** if a judicial proceeding is commenced on or before the due date (determined with regard to extensions) for filing such return to change such trust into a trust which is a qualified domestic trust, as of the time when the changes pursuant to such proceeding are made.

  **(B)** Statute of limitations

If a judicial proceeding described in subparagraph (A)(ii) is commenced with respect to any trust, the period for assessing any deficiency of tax attributable to any failure of such trust to be a qualified domestic trust shall not expire before the date 1 year after the date on which the Secretary is notified that the trust has been changed pursuant to such judicial proceeding or that such proceeding has been terminated.

# SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 2012, 2013, 2014, 2032, 2044, 2056A, 2106, 2206, 2207, 2519, 2523, 2652, 2701 of this title.

SOURCE
AMENDMENTS
EFFECTIVE DATE OF 1997 AMENDMENT
EFFECTIVE DATE OF 1992 AMENDMENT
EFFECTIVE DATE OF 1990 AMENDMENT
EFFECTIVE DATE OF 1989 AMENDMENT
EFFECTIVE DATE OF 1988 AMENDMENT
EFFECTIVE DATE OF 1984 AMENDMENT
EFFECTIVE DATE OF 1983 AMENDMENT
EFFECTIVE DATE OF 1981 AMENDMENT
EFFECTIVE DATE OF 1978 AMENDMENT
EFFECTIVE DATE OF 1976 AMENDMENT
EFFECTIVE DATE OF 1966 AMENDMENT
COMMENCEMENT OF JUDICIAL PROCEEDING TO REFORM TRUST
APPLICATION OF AMENDMENTS BY SECTION 5033 OF PUB. L. 100-647 TO ESTATES OF, OR GIFTS BY, NONCITIZEN AND NONRESIDENT INDIVIDUALS
DISCLAIMER OF INTEREST ARISING FROM ESTATES OF PERSONS DYING BEFORE OCT. 4, 1966, HAVING ESTATE TAX RETURN FILING DATE ON OR AFTER JAN.

*Web edition produced by John Walker*



**APPENDIX PAGE 9**



# Sec. 2505. Unified credit against gift tax

*TITLE 26, Subtitle B, CHAPTER 12, Subchapter A, Sec. 2505.*

## STATUTE

**(a)** General rule

In the case of a citizen or resident of the United States, there shall be allowed as a credit against the tax imposed by section 2501 for each calendar year an amount equal to -

**(1)** the applicable credit amount in effect under section 2010(c) for such calendar year (determined as if the applicable exclusion amount were $1,000,000), reduced by

**(2)** the sum of the amounts allowable as a credit to the individual under this section for all preceding calendar periods.

**(b)** Adjustment to credit for certain gifts made before 1977

The amount allowable under subsection (a) shall be reduced by an amount equal to 20 percent of the aggregate amount allowed as a specific exemption under section 2521 (as in effect before its repeal by the Tax Reform Act of 1976) with respect to gifts made by the individual after September 8, 1976.

**(c)** Limitation based on amount of tax

The amount of the credit allowed under subsection (a) for any calendar year shall not exceed the amount of the tax imposed by section 2501 for such calendar year.

## SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 2056A, 2102 of this title.

SOURCE
AMENDMENTS
EFFECTIVE AND TERMINATION DATES OF 2001 AMENDMENT
EFFECTIVE DATE OF 1997 AMENDMENT
EFFECTIVE DATE OF 1981 AMENDMENT
SAVINGS PROVISION                                    **APPENDIX PAGE 10**

*Texas Statutes and Codes* > *ESTATES CODE* > *TITLE 2. ESTATE OF DECEDENTS; DURABLE POWERS OF ATTORNEY* > *SUBTITLE H. CONTINUATION OF ADMINISTRATION* > *CHAPTER 351. POWERS AND DUTIES OF PERSONAL REPRESENTATIVES IN GENERAL* > *SUBCHAPTER B. GENERAL AUTHORITY OF PERSONAL REPRESENTATIVES*

## § 351.054. Authority to Commence Suits

(a) An executor or administrator appointed in this state may commence a suit for:

   (1) recovery of personal property, debts, or damages; or

   (2) title to or possession of land, any right attached to or arising from that land, or an injury or damage done to that land.

(b) A judgment in a suit described by Subsection (a) is conclusive, but may be set aside by any interested person for fraud or collusion on the executor's or administrator's part.

## History

Enacted by *Acts 2009, 81st Leg., ch. 680 (H.B. 2502)*, § 1, effective January 1, 2014.

LexisNexis ® Texas Annotated Statutes

Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group All rights reserved.

*Texas Statutes and Codes* > *ESTATES CODE* > *TITLE 2. ESTATE OF DECEDENTS; DURABLE POWERS OF ATTORNEY* > *SUBTITLE H. CONTINUATION OF ADMINISTRATION* > *CHAPTER 351. POWERS AND DUTIES OF PERSONAL REPRESENTATIVES IN GENERAL* > *SUBCHAPTER D. COLLECTION OF CLAIMS; RECOVERY OF PROPERTY*

## § 351.151. Ordinary Diligence Required

**(a)** If there is a reasonable prospect of collecting the claims or recovering the property of an estate, the personal representative of the estate shall use ordinary diligence to:

**(1)** collect all claims and debts due the estate; and

**(2)** recover possession of all property to which the estate has claim or title.

**(b)** If a personal representative wilfully neglects to use the ordinary diligence required under Subsection (a), the representative and the sureties on the representative's bond are liable, on the suit of any person interested in the estate, for the use of the estate, for the amount of those claims or the value of that property lost by the neglect.

## History

Enacted by *Acts 2009, 81st Leg., ch. 680 (H.B. 2502)*, § 1, effective January 1, 2014.

**Annotations**

## Notes

**Revisor's Notes. --**

Section 233(a), Texas Probate Code, refers to property of an estate to which "its owners" have claim or title. The revised law substitutes "the estate" for "its owners" for consistency of terminology throughout this subchapter. See Section 233(e), Texas Probate Code, revised in this chapter as Section 351.153.

LexisNexis ® Texas Annotated Statutes

Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group All rights reserved.

*Texas Statutes and Codes* > *ESTATES CODE* > *TITLE 2. ESTATE OF DECEDENTS; DURABLE POWERS OF ATTORNEY* > *SUBTITLE H. CONTINUATION OF ADMINISTRATION* > *CHAPTER 361. DEATH, RESIGNATION, OR REMOVAL OF PERSONAL REPRESENTATIVES; APPOINTMENT OF SUCCESSORS* > *SUBCHAPTER D. PROCEDURES AFTER DEATH, RESIGNATION, OR REMOVAL OF PERSONAL REPRESENTATIVE*

## § 361.153. Rights, Powers, and Duties of Successor Representative

(a) If a personal representative of an estate not administered succeeds another personal representative, the successor representative has all rights, powers, and duties of the predecessor, other than those rights and powers conferred on the predecessor by will that are different from those conferred by this title on personal representatives generally. Subject to that exception, the successor representative shall administer the estate as if the successor's administration were a continuation of the former administration.

(b) A successor representative shall account for all the estate property that came into the predecessor's possession, and is entitled to any order or remedy that the court has the power to give to enforce the delivery of the estate property and the liability of the predecessor's sureties for any portion of the estate property that is not delivered. The successor is not required to account for any portion of the estate property that the successor failed to recover after due diligence.

(c) In addition to the powers granted under Subsections (a) and (b), a successor representative may:

   (1) make himself or herself, and may be made, a party to a suit prosecuted by or against the successor's predecessors;

   (2) settle with the predecessor, and receive and give a receipt for any portion of the estate property that remains in the predecessor's possession; or

   (3) commence a suit on the bond or bonds of the predecessor, in the successor's own name and capacity, for all the estate property that:

      (A) came into the predecessor's possession; and

      (B) has not been accounted for by the predecessor.

## History

Enacted by *Acts 2009, 81st Leg., ch. 680 (H.B. 2502)*, § 1, effective January 1, 2014.

## Annotations

## Notes

**Revisor's Notes. --**

Section 224, Texas Probate Code, refers to a "representative" of the estate. Section 3(aa), Texas Probate Code, revised as Section 22.031 of this code, defines "personal representative" and

"representative" to be synonyms. For consistency of terminology throughout this chapter, the revised law substitutes "personal representative" for "representative."

LexisNexis ® Texas Annotated Statutes

Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group All rights reserved.

### § 223. Further Administration with or Without Will Annexed

Whenever any estate is unrepresented by reason of the death, removal, or resignation of the personal representative of such estate, the court shall grant further administration of the estate when necessary, and with the will annexed where there is a will, upon application therefor by a qualified person interested in the estate. Such appointments shall be made on notice and after hearing, as in case of original appointments, except that when the court finds that there is a necessity for the immediate appointment of a successor representative, such successor may be appointed upon application but without citation or notice.

*Acts 1955, 54th Leg., p. 88, ch. 55, eff. Jan. 1, 1956. Amended by Acts 1969, 61st Leg., p. 1922, ch. 641, § 11, eff. June 12, 1969. Repealed by Acts 2009, 81st Leg., ch. 680, § 10(a), eff. Jan. 1, 2014.*

### § 224. Successors Succeed to Prior Rights, Powers, and Duties

When a representative of the estate not administered succeeds another, he shall be clothed with all rights, powers, and duties of his predecessor, except such rights and powers conferred on the predecessor by will which are different from those conferred by this Code on personal representatives generally. Subject to this exception, the successor shall proceed to administer such estate in like manner as if his administration were a continuation of the former one. He shall be required to account for all the estate which came into the hands of his predecessor and shall be entitled to any order or remedy which the court has power to give in order to enforce the delivery of the estate and the liability of the sureties of his predecessor for so much as is not delivered. He shall be excused from accounting for such of the estate as he has failed to recover after due diligence.

*Acts 1955, 54th Leg., p. 88, ch. 55, eff. Jan. 1, 1956. Repealed by Acts 2009, 81st Leg., ch. 680, § 10(a), eff. Jan. 1, 2014.*

### § 225. Additional Powers of Successor Appointee

In addition, such appointee may make himself, and may be made, a party to suits prosecuted by or against his predecessors. He may settle with the predecessor, and receive and receipt for all such portion of the estate as remains in his hands. He may bring suit on the bond or bonds of the predecessor in his own name and capacity, for all the estate that came into the hands of the predecessor and has not been accounted for by him.

*Acts 1955, 54th Leg., p. 88, ch. 55, eff. Jan. 1, 1956. Repealed by Acts 2009, 81st Leg., ch. 680, § 10(a), eff. Jan. 1, 2014.*

### § 226. Subsequent Executors Also Succeed to Prior Rights and Duties

Whenever an executor shall accept and qualify after letters of administration shall have been granted upon the estate, such executor shall, in like manner, succeed to the previous administrator, and he shall administer the estate in like manner as if his administration were a continuation of the former one, subject, however, to any legal directions of the testator contained in the will in relation to the estate.

*Acts 1955, 54th Leg., p. 88, ch. 55, eff. Jan. 1, 1956. Amended by Acts 1993, 73rd Leg., ch. 957, § 38, eff. Sept. 1, 1993. Repealed by Acts 2009, 81st Leg., ch. 680, § 10(a), eff. Jan. 1, 2014.*

### § 227. Successors Return of Inventory, Appraisement, and List of Claims or Affidavit in Lieu of Inventory, Appraisement, and List of Claims

An appointee who has been qualified to succeed to a prior personal representative shall make and return to the court an inventory, appraisement, and list of claims of the estate or, if the appointee is an independent executor, shall make and return to the court that document or file an affidavit in lieu of the inventory, appraisement, and list of claims, within ninety days after being qualified, in like manner as is provided for original appointees; and he shall also in like manner return additional inventories, appraisements, and lists of claims or file additional affidavits. In all orders appointing successor representatives of estates, the court shall appoint appraisers as in original appointments upon the application of any person interested in the estate.

*Acts 1955, 54th Leg., p. 88, ch. 55, eff. Jan. 1, 1956. Amended by Acts 1969, 61st Leg., p. 1922, ch. 641, § 11, eff. June 12, 1969. Repealed by Acts 2009, 81st Leg., ch. 680, § 10(a), eff. Jan. 1, 2014. Amended by Acts 2011, 82nd Leg., ch. 1338, § 1.27, eff. Sept. 1, 2011.*

## Part 5. General Powers of Personal Representatives

### Statutes in Context
### § 230

The standard of care which a personal representative must use when dealing with estate property is that of a prudent person. See *McLendon v. McLendon*, 862 S.W.2d 662 (Tex. App. — Dallas 1993, writ denied).

### § 230. Care of Property of Estates

The executor or administrator shall take care of the property of the estate of his testator or intestate as a prudent man would take of his own property, and if there be any buildings belonging to the estate, he shall keep the same in good repair, extraordinary casualties excepted, unless directed not to do so by an order of the court.

*Acts 1955, 54th Leg., p. 88, ch. 55, eff. Jan. 1, 1956. Amended by Acts 1975, 64th Leg., p. 268, ch. 114, § 1, eff. April 30, 1975. Amended by Acts 1993, 73rd Leg.,*

*ch. 957, § 39, eff. Sept. 1, 1993. Repealed by Acts 2009, 81ˢᵗ Leg., ch. 680, § 10(a), eff. Jan. 1, 2014.*

---

### Statutes in Context
### § 232

The personal representative has a duty to collect all of the decedent's property under § 232. This right is superior to that of the heirs or beneficiaries. See § 37.

---

### § 232. Representative of Estate Shall Take Possession of Personal Property and Records

The personal representative of an estate, immediately after receiving letters, shall collect and take into possession the personal property, record books, title papers, and other business papers of the estate, and all such in his possession shall be delivered to the person or persons legally entitled thereto when the administration has been closed or a successor has received letters.

*Acts 1955, 54ᵗʰ Leg., p. 88, ch. 55, eff. Jan. 1, 1956. Repealed by Acts 2009, 81ˢᵗ Leg., ch. 680, § 10(a), eff. Jan. 1, 2014.*

---

### Statutes in Context
### § 233

Section 233 provides the personal representative with guidance in collecting the decedent's property. The section also explains when and how the personal representative may hire an attorney on a contingency fee basis to assist in the recovery and collection process.

---

### § 233. Collection of Claims and Recovery of Property

(a) Every personal representative of an estate shall use ordinary diligence to collect all claims and debts due the estate and to recover possession of all property of the estate to which its owners have claim or title, provided there is a reasonable prospect of collecting such claims or of recovering such property. If he wilfully neglects to use such diligence, he and the sureties on his bond shall be liable, at the suit of any person interested in the estate, for the use of the estate, for the amount of such claims or the value of such property as has been lost by such neglect.

(b) Except as provided by Subsection (c) of this section, a personal representative may enter into a contract to convey, or may convey, a contingent interest in any property sought to be recovered, not exceeding one-third thereof, for services of attorneys, subject only to approval of the court in which the estate is being administered.

(c) A personal representative, including an independent executor or independent administrator, may convey or contract to convey for services of an attorney a contingent interest that exceeds one-third of the property sought to be recovered under this section only on the approval of the court in which the estate is being administered. The court must approve a contract entered into or conveyance made under this section before an attorney performs any legal services. A contract entered into or conveyance made in violation of this section is void, unless the court ratifies or reforms the contract or documents relating to the conveyance to the extent necessary to cause the contract or conveyance to meet the requirements of this section.

(d) In approving a contract or conveyance under Subsection (b) or (c) of this section for services of an attorney, the court shall consider:

(1) the time and labor that will be required, the novelty and difficulty of the questions to be involved, and the skill that will be required to perform the legal services properly;

(2) the fee customarily charged in the locality for similar legal services;

(3) the value of property recovered or sought to be recovered by the personal representative under this section;

(4) the benefits to the estate that the attorney will be responsible for securing; and

(5) the experience and ability of the attorney who will be performing the services.

(e) On satisfactory proof to the court, a personal representative of an estate is entitled to all necessary and reasonable expenses incurred by the personal representative in collecting or attempting to collect a claim or debt owed to the estate or in recovering or attempting to recover property to which the estate has a title or claim.

*Acts 1955, 54ᵗʰ Leg., p. 88, ch. 55, eff. Jan. 1, 1956. Amended by Acts 1993, 73ʳᵈ Leg., ch. 848, § 1, eff. Sept. 1, 1993. Repealed by Acts 2009, 81ˢᵗ Leg., ch. 680, § 10(a), eff. Jan. 1, 2014.*

---

### § 233A. Suits by Executors or Administrators

Suits for the recovery of personal property, debts, or damages and suits for title or possession of lands or for any right attached to or growing out of the same or for injury or damage done thereto may be instituted by executors or administrators appointed in this state; and judgment in such cases shall be conclusive, but may be set aside by any person interested for fraud or collusion on the part of such executor or administrator.

*Added by Acts 1985, 69ᵗʰ Leg., ch. 959, § 3, eff. Sept. 1, 1985. Amended by Acts 1993, 73ʳᵈ Leg., ch. 957, § 40, eff. Sept. 1, 1993. Repealed by Acts 2009, 81ˢᵗ Leg., ch. 680, § 10(a), eff. Jan. 1, 2014.*

---

### Statutes in Context
### § 234

Unlike an independent executor, a dependent executor must seek court approval before taking almost all actions with respect to the estate.

106



# ACTEC

# Commentaries

## ON THE MODEL RULES OF PROFESSIONAL CONDUCT

Fourth Edition 2006

# MRPC 1.13: ORGANIZATION AS CLIENT

(a) A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.

(b) If a lawyer for an organization knows that an officer, employee or other person associated with the organization is engaged in action, intends to act or refuses to act in a matter related to the representation that is a violation of a legal obligation to the organization, or a violation of law which reasonably might be imputed to the organization, and is likely to result in substantial injury to the organization, the lawyer shall proceed as is reasonably necessary in the best interest of the organization. In determining how to proceed, the lawyer shall give due consideration to the seriousness of the violation and its consequences, the scope and nature of the lawyer's representation, the responsibility in the organization and the apparent motivation of the persons involved, the policies of the organization concerning such matters and any other relevant considerations. Any measures taken shall be designed to minimize disruption of the organization and the risk of revealing information relating to the representation to persons outside the organization. Such measures may include among others:

   (1) asking for reconsideration of the matter;

   (2) advising that a separate legal opinion on the matter be sought for presentation to appropriate authority in the organization; and

   (3) referring the matter to higher authority in the organization, including, if warranted by the seriousness of the matter, referral to the highest authority that can act on behalf of the organization as determined by applicable law.

(c) If, despite the lawyer's efforts in accordance with paragraph (b), the highest authority that can act on behalf of the organization insists upon action, or a refusal to act, that is clearly a violation of law and is likely to result in substantial injury to the organization, the lawyer may resign in accordance with Rule 1.16.

(d) In dealing with an organization's directors, officers, employees, members, shareholders or other constituents, a lawyer shall explain the identity of the client when the lawyer knows or reasonably should know that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing.

(e) A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.

# ACTEC COMMENTARY ON MRPC 1.13

Subject to the requirements of other rules, including both MRPC 1.6 (Confidentiality of Information) and MRPC 1.7 (Conflict of Interest: Current Clients), the lawyer who represents a corporation, partnership or limited liability company may appropriately undertake to represent individuals who are interested in the business or are employed by it. The common interests of multiple clients with respect to matters concerning the business or family enterprise may predominate over any separate interests they may have. Multiple representation in such cases may be in the best interests of the clients and may provide them with better and more economical representation. The lawyer may, with full disclosure and the

MRPC 1.13

informed consent, confirmed in writing, of the business enterprise and an employee, represent both with respect to matters that affect both (e.g., an employment agreement) if their interests are not seriously adversarial. See ACTEC Commentary on MRPC 1.7 (Conflict of Interest: Current Clients).

The lawyer may similarly represent both a fiduciary that owns an interest in a business enterprise and the business enterprise itself, unless to do so would violate MRPC 1.7 (Conflict of Interest: Current Clients).

A very small minority of cases and ethics opinions have adopted the so-called entity approach under which the fiduciary estate is characterized as the lawyer's client. However, most cases and ethics opinions treat the fiduciary as the lawyer's client and the beneficiaries as persons to whom the lawyer may owe some duties. See ACTEC Commentaries on MRPCs 1.2 (Scope of Representation and Allocation of Authority Between Client and Lawyer), 1.4 (Communication), 1.6 (Confidentiality of Information), 1.7 (Conflict of Interest: Current Clients), 1.9 (Duties to Former Clients) and 1.18 (Duties to Prospective Client). The lawyer and the fiduciary, with the fiduciary's informed consent, confirmed in writing, may agree that the fiduciary estate and not the fiduciary shall be the lawyer's client. See MRPC 1.7(b) (Conflict of Interest: Current Clients) (when representation is permissible notwithstanding a concurrent conflict of interest); MRPC 1.0(e) (Terminology) (defining *informed consent*); and MRPC 1.0(b) (Terminology) (defining *confirmed in writing*). Such an agreement may significantly affect the extent of the lawyer's duties to the fiduciary, including the duty of confidentiality. However, such an agreement may not limit the duties that the lawyer or the fiduciary otherwise owe to the beneficiaries of the fiduciary estate.

## ANNOTATIONS
See Caveat to Annotations on page 12
(Limiting the Scope and Purpose of the Annotations)

See also the Annotations following the ACTEC Commentary on MRPC 1.2.

### Cases

California:
*Responsible Citizens v. Superior Court*, 20 Cal. Rptr. 2d 756 (Ct. App. 1993). Representation of a partnership does not necessarily entail representation of the individual members of the partnership for purposes of determining whether counsel for the partnership must be disqualified if there is a conflict of interest between the partners. "Considering the mutability of circumstances surrounding an attorney's representation of a partnership, and the attorney's relationship with individual partners, we believe the rule's approach is sensible. All partnerships are not shaped by the same mould. The relationship a partnership attorney has with the individual partners will vary from case to case. A rule which may seem appropriate for an attorney representing a two-person general partnership may be entirely inappropriate for an attorney representing a limited partnership with scores or even hundreds of partners." 20 Cal. Rptr. 2d at 765.

District of Columbia:
*Griva v. Davison*, 637 A.2d 830 (D.C. 1994). This decision reversed a summary judgment granted to two members of a three-member general partnership and to the law firm that represented both the partnership and the two individual members in an action for breach of fiduciary duties. Applying the mod-

MRPC 1.13

ified form of MRPCs 1.7 and 1.13 that were adopted in D.C., the court concluded that, "a law firm ethically can represent several individuals in creating a partnership after obtaining their informed consent pursuant to MRPC 1.7(c)." 637 A.2d at 844. The court continued to say that, "with the informed consent of all affected clients, a law firm ethically can represent a partnership and one or more of its individual partners at the same time—including representation as to matters affecting the partnership, except when such dual or multiple representation would result in an 'actual conflict of positions,' Id., in which case the absolute prohibition of MRPC 1.7(a) comes into play." *Id.*

Illinois:

*Gagliardo v. Caffrey*, 800 N.E.2d 489 (Ill. App. 2003). This case is discussed in the Annotations following the ACTEC Commentary on MRPC 1.9.

Michigan:

*Steinway v. Bolden*, 460 N.W.2d 306 (Mich. Ct. App. 1990). "We conclude that the clear intent of the Revised Probate Code and of the court rule is that, although the personal representative retains the attorney, the attorney's client is the estate, rather than the personal representative. The fact that the probate court must approve the attorney's fees for services rendered on behalf of the estate and that the fees are paid out of the estate further supports this conclusion." But see Michigan Probate Court Rule 5.117(A), quoted below, reversing this court's decision.

New Jersey:

*Greate Bay Hotel & Casino, Inc. v. Atlantic City*, 624 A.2d 102 (N.J. Super. Ct. Law Div. 1993). A law firm that represents a business trust is treated as representing the entity and not the individual members of the trust. Accordingly, the law firm was not disqualified from representing a party adverse to a member of the business trust with whom the law firm had no other connection.

Ohio:

*Arpadi v. First MSP Corp.*, 628 N.E.2d 1335 (Ohio 1994). In this action brought by the limited partners of a partnership against the general partner and the law firm that represented the partnership, the Supreme Court of Ohio held that:

[W]hether the duty arising from an attorney-client relationship is owed to the limited partnership itself or to the general partner thereof, it must be viewed as extending to the limited partners as well. Inasmuch as a limited partnership is indistinguishable from the partners which compose it, the duty arising from the relationship between the attorney and the partnership extends as well to the limited partners. Where such duty arises from the relationship between the attorney and the general partner, the fiduciary relationship between the general partner and the limited partners provides the requisite element of privity recognized under *Elam, supra*. Such privity, in turn, extends the duty owed to the general partner to the limited partners regarding matters of concern to the enterprise. 628 N.E. 2d at 1338-1339.

Pennsylvania:

*Pew Trusts*, 16 Fid. Rep. 2d. 73 [Montg. Cty (Pa.) 1995]. Lawyer representing the executor or administrator does owe "derivative duties" to beneficiaries and has an obligation to rectify a situation where the lawyer observes his client taking action that is improper or otherwise to the detriment of the beneficiaries.

MRPC 1.13

130

## Ethics Opinions

Michigan:
Probate Court Rule 5.117(A) states: "[a]n attorney filing an appearance on behalf of a fiduciary or trustee shall represent the fiduciary or trustee." The comment by the Probate Rules Committee stated that the amendment "clarifies that the lawyer represents the fiduciary or trustee and not the estate."

Oregon:
Or. Op. 1991-62 (1991). The lawyer for a personal representative represents the personal representative and not the estate or the beneficiaries as such. See also Or. Op. 1991-113 (1991).

Pennsylvania:
Pa. Op. 91-62A (1991). The lawyer who is retained by an administrator of a decedent's estate represents the estate and not the administrator "at least where the interests of the estate diverge from those of the administrator."

Virginia:
Va. Op. 1473 (1992). A lawyer who is retained to represent "the estate" will be treated as counsel to all co-executors although each co-executor may have independent counsel.

MRPC 1.13

# You Do Not Represent the Estate

by
**Julie E. Bennett, Senior Assistant Director**
**Minnesota Office of Lawyers Professional Responsibility**

Reprinted from *Minnesota Lawyer* (September 7, 2009)

Callers to the Office of Lawyers Professional Responsibility's advisory opinion service sometimes start a conversation with the words "I represent the estate."

While some attorneys likely just use this phrase as shorthand, other attorneys do not seem to understand that, in fact, they are not representing the actual estate but are representing the personal representative of the estate in his or her fiduciary capacity. It is important that lawyers understand this distinction because failure to do so may lead to violations of the Minnesota Rules of Professional Conduct.

Rule 1.2 of the MRPC allows attorneys to limit the scope of a representation. Because the personal representative of an estate also is frequently an heir of the estate, in representing a personal representative in his or her fiduciary capacities, the attorney must be clear about the scope of representation. Failure to define the scope of representation may lead to an impermissible conflict of interest if the personal representative's individual interests diverge from his or her responsibilities as a fiduciary.

As pointed out by the American College of Trust and Estate Counsel, it is important that lawyers advise personal representatives regarding her fiduciary role and the need for impartiality in handling the affairs of the estate.Ftn1

When there are co-personal representatives, a lawyer may endeavor to represent both fiduciaries; the lawyer must, however, advise both regarding the potential problems with joint representation.

For example, the fiduciaries need to understand from the beginning of the representation that all information received by the lawyer can be shared with the other fiduciary.Ftn2 In other words, a lawyer cannot keep information from the other fiduciary merely because the one fiduciary asks him or her to do so. If the fiduciaries are unable to agree on a course of action or otherwise become in conflict with each other, the lawyer will most likely have to withdraw from the representation of both.

Another frequent issue that the Director's Office sees involves complaints which contain the phrase "the attorney for the estate."

These complaints usually go on to criticize the lack of communication on the part of the attorney; frequently such complaints come from a beneficiary of the estate. At the core of these complaints is generally a possible failure of a lawyer to comply with the requirements of Rule 4.3 of the MRPC because the lawyer did not recognize his or her capacity and has identified himself or herself as the attorney "for

the estate" rather than the attorney for the fiduciary. The lawyer has failed to fully explain his or her role and who he or she represents. While it may be important and in some instances desirable for the lawyer representing the personal representative in his or her fiduciary capacity to talk to the beneficiaries of the estate, it is important that the lawyer clearly identify his or her role.

To the extent there is a duty to communicate with beneficiaries, it is a duty of the personal representative. The duty of the lawyer to communicate does not extend beyond the client (the fiduciary) and it is important that beneficiaries understand this point.

When the beneficiary is unrepresented, pursuant to Rule 4.3, the lawyer must clearly identify his or her interest in the matter, identify where the interests of the lawyer's client are adverse to the person the lawyer is speaking to, clear up any misunderstanding regarding the lawyer's role, and not provide any advice other than telling the beneficiary to consult with an attorney of his or her own. Clear definition of the attorney's role goes a long way to quell unrealistic expectations of the beneficiaries.

---

[1] American College of Trust and Estate Counsel Commentaries on the Model Rules of Professional Conduct, Fourth Edition, 2006, commentary on 1.2. The commentaries were created to provide further ethical guidance to trust and estate lawyers.

[2] See Comments 29-33 to MRPC Rule 1.7.

# CASES AND MATERIALS ON
# GRATUITOUS TRANSFERS

## WILLS, INTESTATE SUCCESSION, TRUSTS, GIFTS, FUTURE INTERESTS AND ESTATE AND GIFT TAXATION

## Fourth Edition

By

**Elias Clark**

*Lafayette S. Foster Professor of Law, Emeritus
Yale University*

**Louis Lusky**

*Betts Professor of Law, Emeritus
Columbia University*

**Arthur W. Murphy**

*Joseph Solomon Professor of Law
Columbia University*

**Mark L. Ascher**

*Ralph W. Bilby Professor of Law
University of Arizona College of Law*

**Grayson M.P. McCouch**

*Professor of Law
University of Miami School of Law*

**AMERICAN CASEBOOK SERIES®**



**WEST
GROUP**

ST. PAUL, MINN., 1999

launders out any pre-death appreciation for income tax purposes; on a subsequent sale or disposition of the property, the recipient's taxable gain is limited to post-death appreciation. By contrast, there is no basis step-up in the case of a lifetime gift; the recipient generally takes a carryover basis equal to the donor's basis in the property (adjusted for gift taxes paid). See I.R.C. § 1015; see also I.R.C. § 2654(a) (analogous rules for transfers subject to GST tax). While the income tax benefits of a basis step-up may justify holding appreciated property until death, those benefits should be weighed against the offsetting wealth transfer tax benefits of making lifetime gifts.

## 2. ESTATE AND GIFT TAX CALCULATIONS

### a. Unified Rate Schedule and Unified Credit

Conceptually, the unified system of estate and gift taxation is relatively straightforward, although in some respects the operative statutory provisions may seem (and be) unduly cumbersome. The taxes are cumulative, meaning that all taxable transfers made by an individual during life and at death are cumulated and taxed at progressively higher marginal rates. The following schedule of tax rates applies for both gift and estate tax purposes (I.R.C. § 2001(c)(1)):

### Unified Transfer Tax Rate Schedule

| Taxable amount: | Tax on such amount: |
| --- | --- |
| Not over $10,000 | 18% of such amount |
| Over $10,000 but not over $20,000 | $1,800, plus 20% of the excess over $10,000 |
| Over $20,000 but not over $40,000 | $3,800, plus 22% of the excess over $20,000 |
| Over $40,000 but not over $60,000 | $8,200, plus 24% of the excess over $40,000 |
| Over $60,000 but not over $80,000 | $13,000, plus 26% of the excess over $60,000 |
| Over $80,000 but not over $100,000 | $18,200, plus 28% of the excess over $80,000 |
| Over $100,000 but not over $150,000 | $23,800, plus 30% of the excess over $100,000 |
| Over $150,000 but not over $250,000 | $38,800, plus 32% of the excess over $150,000 |
| Over $250,000 but not over $500,000 | $70,800, plus 34% of the excess over $250,000 |
| Over $500,000 but not over $750,000 | $155,800, plus 37% of the excess over $500,000 |
| Over $750,000 but not over $1,000,000 | $248,300, plus 39% of the excess over $750,000 |
| Over $1,000,000 but not over $1,250,000 | $345,800, plus 41% of the excess over $1,000,000 |
| Over $1,250,000 but not over $1,500,000 | $448,300, plus 43% of the excess over $1,250,000 |
| Over $1,500,000 but not over $2,000,000 | $555,800, plus 45% of the excess over $1,500,000 |
| Over $2,000,000 but not over $2,500,000 | $780,800, plus 49% of the excess over $2,000,000 |
| Over $2,500,000 but not over $3,000,000 | $1,025,800, plus 53% of the excess over $2,500,000 |
| Over $3,000,000 | $1,290,800, plus 55% of the excess over $3,000,000 |

Every individual is allowed a "unified credit" (I.R.C. §§ 2010, 2505) against the tax calculated under the unified rate schedule. The amount of the credit is equal to the tax on a specified amount of cumulative taxable transfers (the "exclusion amount"). In effect, the credit produces an effective tax rate of zero for taxable transfers up to the exclusion amount. The exclusion amount, formerly $600,000, is scheduled to increase as follows, eventually reaching $1,000,000 in 2006 (I.R.C. § 2010(c)):

| Year of death or gift: | Exclusion amount: |
| --- | --- |
| 1998 | $625,000 |
| 1999 | 650,000 |
| 2000 and 2001 | 675,000 |
| 2002 and 2003 | 700,000 |
| 2004 | 850,000 |
| 2005 | 950,000 |
| 2006 or thereafter | 1,000,000 |

interest (i.e., a fixed percentage—at least 5 percent but not more than 50 percent—of the value of the trust property, valued annually).

The mirror image of a charitable remainder trust is a so-called "charitable lead" trust in which the charitable interest takes the form of an annuity or unitrust interest preceding a remainder interest in non-charitable beneficiaries.

A pooled income fund is a trust or other fund maintained by a charitable organization as a vehicle for contributions of remainder interests following life income interests in the donor or other beneficiaries. The charitable remainder interest must be irrevocable; the property contributed by each donor must be commingled with similar contributions made by others; and the income beneficiaries must receive amounts determined by the fund's rate of return for the current year.

The statutory provisions and regulations are very detailed and strictly enforced. For more on split-interest transfers, see 3 Bittker & Lokken, Federal Taxation of Income, Estates and Gifts ¶ 82.1.2 (2d ed. 1991).

### c. Marital Deduction

#### (i) Background

The estate tax marital deduction was enacted in 1948, along with a parallel gift tax deduction and the split-income provision in the income tax, for the purpose of equalizing the federal tax treatment of married couples in separate property and community property states. In its original form, the estate tax marital deduction provided tax-free treatment for certain transfers to a decedent's surviving spouse, up to a limit of one-half the "adjusted gross estate" (i.e., the gross estate reduced by deductible expenses, indebtedness and losses under I.R.C. §§ 2053 and 2054).

The 1976 Act increased the maximum marital deduction to equal the greater of $250,000 or one-half the adjusted gross estate; the 1981 Act went further and eliminated the quantitative limit altogether. The 1981 Act also made significant changes in the original qualitative restrictions on the types of transfers which qualify for the marital deduction. Taken together, these changes reflect a view of the married couple as a "taxable unit": each spouse can transfer an unlimited amount of property to the other without any adverse gift or estate tax consequences; it is only when property leaves the marital unit that it becomes subject to tax.

I.R.C. § 2056 provides, in relevant part, as follows:

**(a) Allowance of marital deduction.** For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsection (b), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.